710 F.2d 216
 1983-2 Trade Cases 65,510
 In re BEEF INDUSTRY ANTITRUST LITIGATION--MDL DOCKET NO. 248.
A.L. BLACK, et al., Plaintiffs-Appellants,
v.
ALBERTSON'S, INC., et al., Defendants-Appellees.
R. Dirk AGEE, a/k/a Shoshone Indian Tribe of Duckwater, et
al., Plaintiffs- Appellants,
v.
SAFEWAY STORES, INC., et al., Defendants-Appellees.
MEAT PRICE INVESTIGATORS ASSOCIATION, etc., et al.,
Plaintiffs-Appellants,
v.
SAFEWAY STORES, INC., et al., Defendants-Appellees.
Ronald BECKER, et al., Plaintiffs-Appellants,
v.
SAFEWAY STORES, INC., et al., Defendants-Appellees.
PONY CREEK CATTLE COMPANY, INC., et al., Plaintiffs-Appellants,
v.
The GREAT ATLANTIC & PACIFIC TEA COMPANY, et al.,
Defendants-Appellees.
Richard S. LOWE, et al., Plaintiffs-Appellants,
v.
SAFEWAY STORES, INC., et al., Defendants-Appellees.
 Nos. 82-1433 to 82-1437.
 United States Court of Appeals,
Fifth Circuit.
 July 25, 1983.
Rehearing and Rehearing En Banc Denied Sept. 12, 1983.
 
 Lowell V. Summerhays, Summerhays, Runyan & McLelland, W. Andrew Clawson, Edward T. Wells, Salt Lake City, Utah, for R. Dirk Agee, et al. a/k/a Shoshone Indian Tribe of Duckwater, John T. Bean, et al., Chaparral Cattle Corp., et al., A.D. Lee, et al., Durward W. Lewter, et al., Mrs. J.V. McAdoo, et al., Burke Petersen, et al., Sagebrush Cattlefeeders, et al., Seven Rivers Cattle Co., et al., Trigg Cattle Co., et al., John O. Varian, et al., Wagon Rod Ranch, et al.
 Robert D. Paul, Goodwin, Procter & Hoar, Boston, Mass., for the Stop & Shop Companies, Inc.
 Burt A. Braverman, Cole, Raywid & Braverman, Frances J. Chetwynd, Washington, D.C., for Ronald Becker-DC, et al., Richard Lowe, et al., MPIA-DC, et al.
 James W. Witherspoon, Witherspoon, Aikin & Langley, James E. Elliott, Hereford, Tex., for A.L. Black, et al.
 Thomas F. Curnin, Cahill, Gordon & Reindel, Denis McInerney, New York City, for the Great Atlantic & Pacific Tea Co., Inc.
 Jess B. Hawley, Hawley, Troxell, Ennis & Hawley, Wayne B. Slaughter, Boise, Idaho, for Albertson's Inc.
 Benjamin M. Quigg, Jr., Morgan, Lewis & Bockius, James J. Rodgers, Philadelphia, Pa., for American Stores Co.
 Roy Lewis Shults, Mitchell, Silberberg & Knupp, Los Angeles, Cal., for Arden-Mayfair, Inc.
 Donald B. Holbrook, Jones, Waldo, Holbrook & McDonough, Andrew W. Buffmire, Salt Lake City, Utah, for Skaggs Companies, Inc., Skaggs-Albertson's.
 James F. Rill, Collier, Shannon, Rill & Scott, Kathleen E. McDermott, Washington, D.C., John L. Hauer, Akin, Gump, Hauer & Feld, Richard C. Levin, Dallas, Tex., for the Nat. Ass'n of Food Chains (Food Marketing Institute).
 Timothy J. Sargent, Bodkin, McCarthy, Sargent & Smith, Los Angeles, Cal., for Thriftimart, Inc.
 Ronald L. Olson, Munger, Tolles & Rickerhauser, Allen M. Katz, Los Angeles, Cal., for Vons Grocery Co.
 Charles P. Pillans, III, Bedell, Bedell, Dittmar & Zehmer, John A. Devault, III, Jacksonville, Fla., John K. DeLay, Jr., Storey, Armstrong, Steger & Martin, Dallas, Tex., for Winn-Dixie Stores, Inc.
 Michael E. Bress, Dorsey & Whitney, Minneapolis, Minn., for Super Valu Stores, Inc.
 Lex Hawkins, Hawkins & Norris, Glenn L. Norris, Des Moines, Iowa, for Ronald Becker, et al., Ronald Becker-DC, et al., MPIA, et al., and MPIA-DC, et al.
 John A. Cochrane, Cochrane & Bresnahan, St. Paul, Minn., for Ronald Becker, et al., Ronald Becker-DC, et al., MPIA, et al., and MPIA-DC, et al. in No. 82-1433 only.
 Stephen M. Axinn (argued for all defendants in all cases) Shepard Golfein, Douglas B. Adler, Skadden, Arps, Slate, Meargher & Flom, New York City, for the Grand Union Co.
 Eugene Driker, Barris, Sott, Denn & Driker, Charles S. Rudy, Detroit, Mich., for Borman's, Inc.
 John D. Leech, Calfee, Halter & Griswold, Cleveland, Ohio, for First Nat. Stores, Inc.
 Jerome G. Shapiro, Hughes, Hubbard & Reed, James B. Kobak, Jr., Margaret G. King, New York City, for Supermarkets Gen. Corp.
 Ben L. Krage (argued for all plaintiffs in all cases) Kasmir, Willingham & Krage, Dallas, Tex., for Pony Creek Cattle Co.
 David A. Rosen, Stein, Simpson & Rosen, New York City, for Food Fair Stores, Inc.
 Bernard Gordon, Finley, Kumble, Wagner, Heine, Underberg & Casey, Washington, D.C., for Giant Food, Inc.
 Kirkland & Ellis, Chicago, Ill., and Jeffrey S. Davidson, Washington, D.C., for Nat. Provisioner, Inc.
 Richard W. Odgers, Pillsbury, Madison & Sutro, James L. Warren, San Francisco, Cal., W.B. West, III, Clark, West, Keller, Butler & Ellis, Dallas, Tex., for Safeway Stores, Inc.
 Franklin P. Auwarter, Mayer, Brown & Platt, Dennis A. McMahon, Chicago, Ill., for Nat. Tea Co.
 Theodore A. Groenke, McDermott, Will & Emery, Walter M. Jones, Chicago, Ill., for Jewel Companies, Inc.
 Alexander E. Bennett, Arnold & Porter, Robert S. Thorpe, Washington, D.C., Ernest R. Higginbotham, Wilson W. Herndon, Strasburger & Price, Dallas, Tex., for the Kroger Co.
 Arnold M. Lerman, C. Loring Jetton, Jr., Wilmer, Cutler & Pickering, Washington, D.C., for Lucky Stores, Inc.
 Appeals from the United States District Court for the Northern District of Texas.
 Before REAVLEY and JOHNSON, Circuit Judges, and WYZANSKI*, District Judge.
 REAVLEY, Circuit Judge:
 
 
 1
 This case reaches us for the second time. On the prior appeal, In Re Beef Industry Antitrust Litigation, 600 F.2d 1148 (5th Cir.1979), (Beef I ) this court reversed the district court's dismissal on the pleadings of the plaintiffs' claim. Returning to the district court, the defendants once again prevailed, this time on a motion for summary judgment. In Re Beef Industry Antitrust Litigation, 542 F.Supp. 1122 (N.D.Tex.1982) (Beef II ). Plaintiff-appellants return, but we agree with the district court's opinion and affirm.
 
 
 2
 Plaintiffs are feeders who fatten cattle and prepare them for market. Defendants are, with certain exceptions, retail grocery chains who sell beef to the public.[1] Plaintiffs alleged that defendants engaged in a conspiracy to set wholesale beef prices at artificially depressed levels. Plaintiffs, however, do not sell their cattle directly to the defendants. Instead, the plaintiffs sell to middlemen, the packers, who slaughter the cattle and sell the beef to defendants. Plaintiffs alleged that the packers passed on these artificially depressed prices without absorbing any losses.
 
 
 3
 This allegation ran into the seemingly insurmountable obstacle of the Supreme Court's pronouncements in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) and Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). In Hanover Shoe, the court held that a defendant may not assert that the plaintiff was not damaged by the defendant's monopoly price when the plaintiff passed on that price to its customers. The court rejected this "pass-on" defense because of the difficulty in reconstructing a company's pricing and output decisions, and because of concerns with overburdening already complicated antitrust actions. In Illinois Brick, the court rejected the offensive use by plaintiffs of this pass-on theory. The court relied on a rationale similar to Hanover Shoe, but stressed more heavily the potential impairment of the treble damage remedy by the introduction of complicated tracing evidence regarding pricing decisions.
 
 
 4
 Faced with this obstacle, the plaintiffs asserted that their suit fell within an exception for cost-plus contracts mentioned in both Hanover Shoe and Illinois Brick. The court in Illinois Brick explained the exception's rationale:
 
 
 5
 The [Hanover Shoe] Court allowed a pass-on defense ... because the pre-existing cost-plus contract makes easy the normally complicated task of demonstrating that the overcharge has not been absorbed by the direct purchaser.
 
 
 6
 431 U.S. at 732 n. 12, 97 S.Ct. at 2067 n. 12.
 
 
 7
 Plaintiffs argued that certain peculiarities and practices of the beef industry created the functional equivalent of a cost-plus contract. They alleged that the defendants set beef prices that were reported daily in the National Provisioner Daily Market and News Service or "Yellow Sheet," and that the packers then engaged in rigid formula pricing based on the Yellow Sheet. Plaintiffs also alleged that due to the relatively short period of time in which a fattened steer or heifer will achieve and remain at choice grade, the supply of cattle is inelastic, and the plaintiffs are therefore unable to negotiate price or withhold their product.
 
 
 8
 This court in Beef I agreed with plaintiffs in the procedural posture of a dismissal on the pleadings. The court stated:
 
 
 9
 [T]he allegations of the complaints state a case within the "cost-plus" exception. The complaints sufficiently allege that the impact of the retail chains' price changes upon the pricing decisions of the packers is determined in advance without regard to the interactions of supply and demand. The plaintiffs allege that the packers set the price of live cattle by strictly applying certain formulae to the Yellow Sheet or Safeway wholesale beef price. Under these allegations a plaintiff would be entitled, once he proved what the competitive wholesale price would have been for a given grade of beef in a given region at a given time, and once he established that the packer to whom he sold strictly applied a formula to the Yellow Sheet price for the particular sale, to damages in the amount of the difference between the price he actually received on that sale of fat cattle and the price he would have received absent price-fixing (computed by applying the packer's formula to the constructed competitive wholesale price). The packer's habitual use of predetermined formulae would enable measurement of the effect on prices for fat cattle of changes in wholesale prices. The plaintiffs have alleged the functional equivalent of cost-plus contracts.
 
 
 10
 (footnotes omitted) 600 F.2d at 1165. The court, however, also emphasized that the plaintiffs would be required to present "detailed proof as to individual transactions," Id. at 1166.
 
 
 11
 Plaintiffs' summary judgment proof, however, falls far short of their allegations. The defendant-retailers showed that there was no genuine issue as to any material fact and that they were entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Mississippi Hospital Association, Inc. v. Heckler, 701 F.2d 511, 516 (5th Cir.1983). The defendants' overwhelming proof demonstrates that other factors beyond the Yellow Sheet quotations influenced the packers' pricing decision. Specifically, the proof showed that the following factors influenced packers' pricing decisions:
 
 
 12
 (1) The packers' individual needs in regard to obtaining a minimum amount of cattle each week. This was necessitated by labor contracts which required that if the packers opened their doors on Monday, they had to pay their employees for the week, regardless of whether they worked.
 
 
 13
 (2) Temporary local market conditions such as the weather or an over or under-supply of beef. This forced the packers to bid over or under the Yellow Sheet price.
 
 
 14
 (3) Price competition among the packers.
 
 
 15
 (4) The beef by-product market (i.e. the sale of hides and nonedible parts of cattle). This market was highly competitive and forced the packers to pay prices over and under the Yellow Sheet price.
 
 
 16
 Plaintiffs do not seriously contest that these factors did, on occasion, affect the packers' pricing decision. Instead, they assert that at a trial on the merits, the district court should examine evidence of the effect of these factors over time, as opposed to a transaction by transaction basis. Plaintiffs presented affidavit testimony that the packers attempted to break even on the beef and recover slaughtering costs and profits from the sale of the beef by-products.
 
 
 17
 While at first blush this argument may seem appealing, it does not withstand close examination. In Beef I, we stressed that plaintiffs alleged that defendants "strictly appli[ed] certain formulae to the Yellow Sheet ... price." 600 F.2d at 1165, and we characterized the packers alleged pricing practices as "rigid formula pricing." Id. at 1166. This emphasis on the rigidity and strictness of this formula pricing was not inadvertent. It was mandated by the nature of the cost-plus contract and the Supreme Court's rejection of an exception for cost based rules of thumb in Illinois Brick. The nature of a cost-plus contract is such that there is absolute certainty as to the application and the amount of the pass-on. Individual transactions do not have to be weighed to measure whether and to what extent the pass-on occurred. Plaintiffs' averaging theory does not partake of this certainty. As the district court noted, "[i]f packers averaged out gains and losses, ... they would absorb some loss on some days." Beef II, 542 F.Supp. at 1139 n. 19. To show how much of the loss was absorbed by the packers would be to resort to the sort of speculative evidence forbidden by Illinois Brick.
 
 
 18
 Plaintiffs' averaging theory also runs afoul of Illinois Brick's rejection of an exception for "cost-based rules of thumb in setting prices." 431 U.S. at 744, 97 S.Ct. at 2073. To say that on the average, packers attempted to pay the Yellow Sheet price for beef is to say that the Yellow Sheet was no more than a rule of thumb. As the Court explained in Illinois Brick:
 
 
 19
 These rules are not adhered to rigidly, however; the extent of the markup (or the allocation of costs) is varied to reflect demand conditions. The intricacies of tracing the effect of an overcharge on the purchaser's prices, costs, sales, and profits thus are not spared the litigants.
 
 
 20
 (citations omitted). Id.
 
 
 21
 Plaintiffs also invite us to reverse Beef I and hold that Illinois Brick does not apply. We decline this invitation, because we are bound and, as well, because we agree with it.
 
 
 22
 AFFIRMED.
 
 
 
 *
 District Judge of the District of Massachusetts, sitting by designation
 
 
 [1]
 The exceptions are one wholesale grocer, a national trade association and the publisher of a beef industry price list, the Yellow Sheet